IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALICIA N. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:17-cv-00818-PWG |
| | ) | |
| THE WASHINGTON POST, | ) | |
| CALLUM BORCHERS, EMILY HEIL, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Local Rule 105, and based on the accompanying Memorandum of Law, Declaration of Lisa Zycherman, and attached exhibits, Defendants The Washington Post, Callum Borchers, and Emily Heil (collectively, the "Washington Post Defendants") move the Court to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.

## I.      PRELIMINARY STATEMENT

Plaintiff Alicia Watkins – veterans' advocate, beauty pageant winner, and reality TV star – sues The Washington Post and two of its reporters over three articles raising questions about Plaintiff's appearance at a press conference in March 2016 for then-presidential candidate Donald Trump.  This is but one of five lawsuits Plaintiff has filed in this Court in recent months against news organizations and journalists reporting on her public appearance at the campaign event.[1]  Alleging that The Washington Post's coverage defamed her, cast her in a false light, and

---

[1] See *Watkins v. Cable News Network, Inc. et al.*, No. 8:17-cv-00780-GJH (D. Md. filed Mar. 21, 2017); *Watkins v. Carr et al.*, No. 8:17-cv-00819-PX (D. Md. filed Mar. 24, 2017); *Watkins v. Guardians of Valor, LLC, et al.*, No. 8:17-cv-00894-GJH (D. Md. filed Mar. 31, 2017, and dismissed July 5, 2017); *Watkins v. Air Force Times, et al.*, No. 8:17-cv-00893-TDC (D. Md. filed Apr. 3, 3017, dismissed May 17, 2017, and recons. denied June 16, 2017).

intentionally inflicted emotional distress, Plaintiff seeks 20 million dollars in compensatory damages and 5 to 10 million dollars in punitive damages from Defendants.[2]

Where, as here, a public figure voluntarily pursues media attention then seeks to silence a news organization commenting on her public appearance – at a presidential campaign press conference, no less – early dismissal is warranted.  The purpose of Rule 12(b)(6) is to permit Courts to terminate lawsuits such as Plaintiff's that are fatally flawed in their legal premises to spare the litigants the burdens of unnecessary pretrial and trial activity.  Those principles – to weed out meritless claims – are especially critical in defamation cases such as this, where forcing the press to incur unnecessary costs defending meritless lawsuits chills free speech.  These considerations are no less present when a libel plaintiff is, as here, *pro se*.  Screening out facially meritless cases before expensive litigation inhibits First Amendment protected speech is of vital importance.

The Court should dismiss Plaintiff 's Amended Complaint in its entirety with prejudice, as a matter of law, for the following separate and independent reasons:  As an initial matter, two of the three articles in suit[3] (Exs. A-B) were published more than one year before Plaintiff filed this lawsuit and are therefore outside the one-year limitations period for defamation suits in Maryland and D.C.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-105; D.C. Code § 12-301(4).  Even if Plaintiff claims she filed her lawsuit within one year of discovering the articles, her

---

[2] The Amended Complaint requests judgment for punitive damages "in an amount of not less than Five Million Dollars ($10,000,000)."

[3] *See* Declaration of Lisa Zycherman ("Zycherman Decl."), Ex. A ("What was with that random woman who got a job interview at Trump's news conference?," Callum Borchers (Mar. 21, 2016)) ("March 21 Article"); Ex. B ("Who is the woman Donald Trump tried to hire in the middle of his press conference?," Emily Heil (Mar. 22, 2016)) ("March 22 Article"); Ex. C ("The curious case of the woman Donald Trump 'interviewed' for a job this week," Callum Borchers (Mar. 25, 2016)) ("March 25 Article").  When a defendant attaches a document to its motion to dismiss, a court may consider it if it was "'integral to and explicitly relied on in the complaint.'"  *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (citation omitted).  The March 21, March 22, and March 25 Articles are all referenced and attached to the Amended Complaint, and may properly be considered by the Court in reviewing this motion.

claims based on the March 21 and 22 Articles are time-barred because the Articles appeared in a mass media publication and the date Plaintiff discovered them is irrelevant.  (Point I.)  The Amended Complaint should be dismissed as against Defendant Heil because Plaintiff does not allege that the reporter played any role in the March 25 Article, the one article remaining in this lawsuit.  (Point II.)

As for the merits, Plaintiff's defamation claims are implausible on their face under the *Iqbal* and *Twombly* standard because many of the statements Plaintiff complains of are not even found in the Articles in suit.  (Point III.)  In addition, the Amended Complaint fails to state a claim because it cannot plausibly allege – much less prove – that any statement in the Articles, which report and rely on Plaintiff's own public statements to reputable news outlets, Plaintiff's interview with Defendants, and military records, is substantially false. (Point IV.)

Furthermore, statements contained in the Articles cannot form the basis of a libel suit because they are non-actionable expressions of opinion, which set forth the facts upon which the opinion is based allowing readers to draw their own conclusions.  (Point V.)  Moreover, Plaintiff, a limited-purpose public figure, has not and cannot plausibly plead that Defendants published the Articles with actual malice – that is, with knowledge of falsity or reckless disregard for the truth, the stringent standard of fault applicable in this case.  Defendants interviewed Plaintiff, published her denials, and relied on reputable news media and military records.  (Point VI.) Finally, Plaintiff's remaining tort claims are barred for the same reasons as her libel claim, and because Plaintiff fails to plausibly plead facts to allege the elements of those claims.  (Point VII.)

## II.      STATEMENT OF THE CASE

### A.      The Washington Post Articles

The Washington Post Defendants extensively sourced the three Articles in suit on past media accounts and military records of Plaintiff's service in the U.S. Air Force, including hyperlinks within the Articles to many of the referenced sources.  The March 25 Article refers generally to Plaintiff's appearances "on the 'Oprah Winfrey Show,' CNN and Fox News Channel and in articles by the Associated Press and Newsday, among other publications" for the proposition that Watkins "has an uncanny knack for finding the spotlight."  Ex. C at 1 (hyperlinking to Fox News Channel story).

The March 25 Article cites reporting by the Associated Press that Watkins claimed to witness the 9/11 attack on the Pentagon, and her later statements to CBS News and the Springfield (Mass.) Republican that she was at the Pentagon itself the day of the attack.  *Id.* (hyperlinking to each story).  Relying on "Air Force Personnel Center" records, the Article reports, "Watkins was indeed stationed at the Pentagon between October 2000 and July 2004." *Id.*  The Article then references a Los Angeles Air Force Base report describing Plaintiff's remarks that she was a Ground Zero survivor on 9/11.  *Id.* (hyperlinking to Air Force report). The Article includes Watkins' denial that she "claimed to be in New York or that she enlisted after 9/11," and her assertion that the information on the Air Force site was false.  *Id.*

The March 25 Article contrasts Watkins' claim that she had 16 years of military service with "records at the Air Force Personnel Center and the National Archives and Records Administration" that she served only nine years.  *Id.* at 3.  The Article again includes Plaintiff's denial – this time that the military's records erroneously reflect a retirement date of May 16, 2008.  The Article includes Plaintiff's contention that she retired from active service on September 24, 2012, and her acknowledgment that the date actually reflects the expiration of her

time on the Temporary Disability Retirement List, with the further explanation, relying on the Department of Defense, that an individual on the Temporary Disability Retirement List is considered "a retired member of the armed forces."  *Id.*[4]

The March 25 Article cites Watkins' statement in an interview for the Oprah Winfrey Network that she was "accepted" to Harvard University.  *Id.*  The Article then cites (and links to) publicly-available information on the Harvard University website, stating that Harvard Extension School, where Plaintiff was enrolled, is "available to anyone who signs up and pays tuition."  *Id.*[5]

### B.  Plaintiff Alicia Watkins

Plaintiff's appearance at the March 21 Trump campaign news conference was not her first public appearance.  Plaintiff has been the subject of wide-ranging media coverage since at least 2006.[6]  That year, an Associated Press writer in Afghanistan reported that Plaintiff delivered "an emotional speech at the main U.S. base in Kabul."[7]  The story named Plaintiff among "soldiers who witnessed the attack on the Pentagon."  *Id.*  In 2007, when Plaintiff was stationed at the Los Angeles Air Force base, Plaintiff spoke at a ceremony for veterans returning from deployment.  An Air Force publication reported:  "General Hamel introduced an impromptu speaker, Staff Sgt. Alicia Watkins, 61st Communications Squadron, to briefly talk about her deployment and what

---

[4] Hyperlinking to http://www.dfas.mil/retiredmilitary/disability/disability.html.

[5] Hyperlinking to http://www.extension.harvard.edu/about-us, and http://www.extension.harvard.edu/tuition-enrollment.

[6] The Court may consider documents such as news articles and government records subject to judicial notice without converting this motion to one for summary judgment.  *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("Judicial notice is properly taken of publicly available historical articles" on a Rule 12(b)(6) motion); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 n.1 (D.D.C. 2016) (granting motion to dismiss and relying on news articles submitted to establish public controversy; and plaintiff's connection to the controversy; "[t]he Court takes judicial notice of the articles not for their truth but merely for the fact that they were published"), *aff'd*, No. 16-7026, 2017 WL 2350275 (D.C. Cir. Mar. 3, 2017).

[7] *See* http://www.washingtonpost.com/wp-dyn/content/article/2006/09/11/AR2006091100511_pf.html.

motivated her while she was deployed." The report noted that Plaintiff "was outside her office building in New York when the terrorists attacked and her best friend lost her life."[8]

In 2010, Oprah Winfrey featured Watkins in a segment titled "A Day in the Life of a Homeless Female Veteran."[9] Watkins again appeared on the Oprah Winfrey Network in 2015 in a "Where Are They Now?" segment.[10] On Memorial Day in 2011, Watkins was interviewed live on CNN. She spoke about her experience at the Pentagon during the 9/11 attack, her military service, and her struggles as a homeless veteran.[11] In 2013, Watkins was featured in an article for the Springfield (Mass.) Republican awaiting the arrival of President Obama following the Boston Marathon bombings.[12]

In 2014, Watkins, identified as a "Harvard student," appeared in a local ABC news report about a "horse whisperer" who brings veterans with PTSD in contact with horses to help heal them.[13] Plaintiff's appearances in the spotlight also include back-to-back pageant titles.[14] In

---

[8] *See* http://www.losangeles.af.mil/News/Article-Display/Article/344400/los-angeles-afb-welcomes-home-deployed-airmen/. The report included a photo of Plaintiff with the caption: "SSgt Alicia Watkins … spoke about how being at Ground Zero on 9/11 motivated her to join the Air Force and kept her going during her recent deployment."

[9] *See* http://www.oprah.com/own-oprahshow/a-day-in-the-life-of-a-homeless-veteran-video.

[10] In her 2015 appearance, Plaintiff stated that in 2012 she was accepted to Harvard, with her college expenses covered by the G.I. bill, and noted that she was recently engaged to be married. *See* https://www.youtube.com/watch?v=YGSleGw5Xac.

[11] *See* http://www.cnn.com/TRANSCRIPTS/1105/30/cnr.06.html. Later that year, at a memorial event on the tenth anniversary of 9/11, Plaintiff again told reporters that "she feels 'a tremendous amount of guilt' that she survived the attack on the Pentagon when [her friend] did not." http://www.cbsnews.com/pictures/10-years-later-remembering-9-11-at-the-pentagon/; http://www.newsday.com/911-anniversary/a-day-of-heart-rending-emotion-at-ground-zero-1.3160980).

[12] The article described Plaintiff as an Air Force veteran injured in Afghanistan. "I never thought I would have to deal with a war-time situation in Boston," she told the reporter. *See* http://www.masslive.com/news/boston/index.ssf/2013/04/air_force_veteran_who_survived.html. The headline identifies Watkins as an "Air Force veteran who survived 9/11 attacks at Pentagon," and states that she "was working at the Pentagon when the hijacked aircraft crashed into the building during the Sept. 11, 2001 terrorist attacks." The article further identifies Watkins as "a Harvard student."

[13] *See* http://wjla.com/features/veterans/-horse-whisperer-works-to-heal-veterans-with-ptsd-107398. The report states Plaintiff "served in Iraq, Afghanistan and was in the Pentagon on 9/11." She explained, "I experienced IEDs, suicide bombers, … I went through traumatic brain injury…." A similar story featuring Plaintiff was picked up by the Fox News Channel in 2014, *see* http://video.foxnews.com/v/3757628930001/?#sp=show-clips, as well as

March 2016, at the same time Plaintiff appeared at the Trump event, and the articles in this suit were published, she was promoting her appearance on a cable television program for the TLC network, "Say Yes to the Dress."[15]

### C.   Amended Complaint Allegations

Plaintiff's Amended Complaint boils down to one central allegation: Defendants defamed her in reporting on her appearance at a Trump rally by, she says, portraying her as "a dishonest attention-seeking veteran with ill intentions for advocating for homeless veterans who lied about her military service."  Am. Compl. ¶ 33.[16]

## III.   ARGUMENT

### A.   Defamation Claims Based on the March 21 and 22, 2016 Articles are Time-Barred

Claims arising from two of the three Articles, published more than one year before Plaintiff filed this lawsuit, are outside any applicable statute of limitation, and should be dismissed outright.  Md. Code Ann., Cts. & Jud. Proc. § 5-105 (one year limitations period under Maryland law); D.C. Code § 12-301(4) (one year limitations period under D.C. law).  Under the single publication rule, the limitations period runs from the date of first publication of each Article.  *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 692 (D. Md. 2004) (citing *Bagwell*

---

Baltimore Magazine in 2015, *see* http://www.baltimoremagazine.com/2015/5/5/former-racehorses-transition-to-second-careers.

[14] In 2014, Plaintiff was named Ms. Massachusetts, https://www.bostonglobe.com/lifestyle/names/2014/03/31/miss-massachusetts-united-states-names-winners-and-honorary-little-miss-massachusetts/oOWQYgvhZKBKWq47CPkSCL/story.html, and she became Ms. Maryland in 2015, http://www.capitalgazette.com/news/annapolis/ph-2417833-ph-ac-cn-mlk-marshal-jpg-20150119-photo.html.

[15] The show features brides-to-be who visit a wedding dress store to find a gown.  *See* https://www.youtube.com/watch?v=zP9sbdMO-y4&feature=youtu.be.  The TLC network promoted the episode featuring Plaintiff as:  "War veteran and bride-to-be Alicia has served in both Iraq and Afghanistan."  *See* https://www.tlc.com/tv-shows/say-yes-to-the-dress/full-episodes/this-is-your-day.

[16] The Amended Complaint alleges a retraction was requested after publication.  *Id.* ¶ 27 .

*v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 665 A.2d 297 (1996)), *aff'd*, 120 F. App'x 465

(4th Cir. 2005); *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 236 (D. Md. 1997).

The statute begins to run when Plaintiff  knew, or should have known, she was injured by

the allegedly false statements, *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 342 (D. Md.

2011), *aff'd*, 519 F. App'x 199 (4th Cir. 2013); *Hickey*, 978 F. Supp. at 235, not upon her

discovery of the Articles.  Here, the limitations period began to run on March 21 and March 22,

the dates the first two Articles were published.  Where, as here, "articles were widely available

online and could have been discovered immediately, the statute of limitations [begins] to accrue

on the date the articles were published."  *Tani v. Washington Post*, No. PJM 08-1130, 2009 WL

8652384, at *2 (D. Md. June 18, 2009), *aff'd*, 352 F. App'x 792 (4th Cir. 2009); *Interphase*

*Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008);

*accord Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 299 (D.C. 2001) ("[E]very other

court squarely faced with this issue [has] reject[ed] application of the discovery rule in mass

media defamation claims.")

Even if it were not the rule that a plaintiff "reasonably should have known" about

purportedly defamatory statements made in mass media as of the time of publication, the Articles

themselves, the Amended Complaint on its face, and other contemporaneous media accounts

(over which Plaintiff sues in this Court) suggest that Plaintiff did indeed know of the Articles on

the dates they were published.[17]  Therefore, any claims based on the March 21 and March 22

Articles are time-barred and should be dismissed.  *Bass v. E.I. DuPont Nemours & Co.*, 28 F.

App'x 201, 205-06 (4th Cir. 2002) (affirming dismissal of defamation claim time-barred by one-

---

[17] On March 21, 2016, the date of the Trump campaign event, the national press, including CNN, and other news
outlets, picked up the story of Watkins' appearance.  The Washington Post's March 22 Article states that the Post
contacted Watkins by phone that day and questioned her about her appearance.  *See* Ex. B.  Exhibit 4 to the
Amended Complaint purports to be a copy of March 22, 2016 email correspondence from Borchers to Plaintiff
regarding her appearance at the event.

year statute of limitations); *Machie v. Manger*, No. AW-09-2196, 2010 WL 2132223, at *6 (D. Md. May 25, 2010) (same).[18]

### B.      Plaintiff Fails to Plead A Plausible Claim For Defamation

Early dismissal of meritless claims, such as Plaintiff's, is particularly important in the defamation context because unnecessary discovery and defense costs, not to mention the simple threat of future libel claims, burden free speech.  "Summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails."  *Farah v. Esquire Magazine*, 736 F.3d 528, 377-78 (D.C. Cir. 2013) (affirming Rule 12(b)(6) dismissal of libel claim).  *See also McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

Plaintiff's claims are not plausible on their face.  Although "[c]omplaints filed by *pro se* plaintiffs are construed more liberally than those drafted by an attorney," a *pro se* party must still comply with *Twombly* and *Iqbal* standards.  *Bailey v. Black Entm't Television*, No. 3:09CV787, 2010 WL 1780403, at *2 (E.D. Va. May 3, 2010) (citation omitted), *aff'd*, 393 F. App'x 971 (4th Cir. 2010) (*per curiam*); *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff's Amended Complaint fails on that score.

A court must take all well-pleaded factual allegations as true for a Rule 12(b)(6) motion, but legal conclusions "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A plaintiff must provide "enough facts to state a claim to relief that is plausible on its face," rather than merely possible.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 696-97.

---

[18] All claims against Washington Post reporter Emily Heil should be dismissed as well.  The defamation claims arising from the March 22 Article she authored are time-barred.  And the Amended Complaint does not allege that Heil reported, wrote, edited, or otherwise contributed to the March 25 Article remaining in suit.

A complaint satisfies the plausibility requirement only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.[19]

Here, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Eastern Shore Markets, Inc. v. J.S. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see Moseley v. Price*, 300 F. Supp. 2d 389, 395 (E.D. Va. 2004), *aff'd*, 106 F. App'x 873 (4th Cir. 2004).  The Court may ignore Plaintiff's unsubstantiated conclusions, for example, that Defendants demeaned Plaintiff on the basis of her race, Am. Compl. ¶¶ 1, 12, "lied," Am. Compl. ¶ 57, to "fit[] [an] agenda," Am. Compl. ¶ 39, and "identified Ms. Watkins as a woman 'posing' as a member of the media," Am. Compl. ¶ 65.  Plaintiff does not allege any of the Articles used such terms, and a review of the Articles on their face confirms they did not. *See Moseley*, 300 F. Supp. 2d at 395.  In determining the viability of Plaintiff's claims on this motion to dismiss, this Court should not accept Plaintiff's factual allegations that "run[] afoul" of the unambiguous publications upon which she relies.  *PBM Nutritionals, LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 627 (E.D. Va. 2009).  Watkins' allegations are belied by the publications themselves, and are entitled to no legal deference whatsoever.

Courts routinely dismiss libel claims at the pleading stage for the very deficiencies set forth in this motion.  *See, e.g.*, *infra* notes 23 & 27.  And so should the Court here.

---

[19] *See, e.g.*, *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (applying *Iqbal* and *Twombly* pleading standards to Rule 12(b)(6) motion in public figure libel case and affirming trial court's dismissal because plaintiff's complaint contained only "conclusory" allegations of knowing or reckless falsity and contained "a mere recitation of the legal standard").

**C.      Plaintiff Fails to Plausibly Plead Substantial Falsity**

Plaintiff has not and cannot plausibly plead – much less prove – that any statement in the March 25 Article is substantially false.  Truth is an absolute shield to defamation liability, *Koren v. Capital-Gazette Newspapers*, Inc., 22 Md. App. 576, 325 A.2d 140 (1974),[20] and the plaintiff bears the burden of pleading and proving falsity.  *Murray v. United Food & Commercial Workers Int'l Union, Local 400*, 229 F. Supp. 2d 465, 476 (D. Md. 2003), *aff'd*, 100 F. App'x 165 (4th Cir. 2004); *Trundle v. Homeside Lending, Inc.*, 162 F. Supp. 2d 396, 400 (D. Md. 2001).[21]  The First Amendment and the doctrine of "substantial truth" do not tolerate claims based on Plaintiff's strained interpretations.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991).  "If the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'"  *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)).  In this case, the Articles are supported by accounts of Plaintiff's past interviews and comments in other widely distributed publications, her statements to Defendants, or information from government sources, including U.S. Air Force publications and military records.  *See supra* § II.A; *infra* §§ III.D & III.E.3.

---

[20] Where, as here, all of the Washington Post Defendants' defenses "depend upon the application of a federal constitutional limitation on state defamation claims," and "[t]hese limitations apply with equal force to causes of action arising under" either Maryland or D.C. law, Defendants reference cases from both jurisdictions because the Court's resolution of this motion does not turn on which jurisdiction's law applies.  *Montgomery v. Risen*, 197 F. Supp. 3d 219, 234-35 (D.D.C. 2016), *appeal pending*, No. 16-7096 (D.C. Cir. Aug. 15, 2016).

[21] "In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements ... (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm."  *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (internal quotation marks and citation omitted).  A "false" statement is one that is not substantially correct."  *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that Borchers "lied on the date Watkins gave him as her official retirement certificate," Am. Compl. ¶ 27,[22] but the March 25 Article explicitly relies on records at the Air Force Personnel Center and the National Archives and Records Administration showing Plaintiff retired on May 16, 2008.  Ex. C at 3.  The Article then sets forth Watkins' claim that the date recorded is inaccurate, reports that Watkins "provided a retirement certificate dated Sept. 24, 2012," *id.*, and further explains that the date represented Plaintiff's "expiration of her time on what is known as the Temporary Disability Retirement List," and the Department of Defense's explanation that disability retirement status is not active status.  *Id.*  The Article goes on to conclude that even if Watkins' proffered date of retirement were correct, she still would not have served the 16 years of military duty she had previously claimed in an interview with *Baltimore Magazine.  Id.*

Plaintiff must show that Defendants' allegedly false statements about the date of her retirement were more damaging than a truthful report would have been.  *See Batson v. Shiflett*, 325 Md. 684, 727, 602 A.2d 1191, 1212 (1992) ("[A] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." (internal quotation marks and citation omitted)) (citing *Masson*, 501 U.S. at 516-17); *Group W Television*, 903 F.2d at 1004 (same).  Even if the March 25 Article misreported the date Watkins claimed to have retired from active military service (and Plaintiff does not specify which date she claims to have given to Borchers), the fact that Watkins told

---

[22] Plaintiff's further allegation that Borchers "lied on" a "WAPO request for Ms. Watkins's to post in The WAPO falsifying the email from WAPO to Ms. Watkins," Am. Compl. ¶ 27, may refer to statements in the March 25 Article reporting that Watkins expressed interest in "do[ing] some reporting for what she described as an 'op-ed' that The Washington Post asked her to write last year," Ex. C at 3-4**,** and the further statement, in parentheses, "(A Post editor clarified that Watkins was invited to write about her time as a homeless veteran on the PostEverything blog and would not have been paid.)"  *Id.* at 4.  It is difficult to ascertain from the Amended Complaint what Plaintiff claims is defamatory about these statements – especially insofar as they do not mention an "email from WAPO."

Baltimore Magazine she served 16 years, and that Air Force Personnel Center records show she

only served nine and half, would not have produced a different, substantially more negative

effect on the mind of the reader.  A minor inaccuracy, even if there were one here, that does not

alter the gist or sting of the statement at issue is insufficient to sustain a defamation claim.

*Dobkin v. Johns Hopkins Univ.*, No. 96-1715, 1999 WL 22901, at *4 (4th Cir. 1999) (*per*

*curiam*); *Brown v. Ferguson Enters., Inc.*, No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md.

2012); *Batson*, 325 Md. at 726, 602 A.2d at 1212.  Thus, the Amended Complaint fails to

plausibly plead substantial falsity.

>    **D.     Statements In the March 25 Article Are Non-Actionable Opinion Because the**
>    **         Underlying True Facts are Disclosed**

Where, as here, a publication sets out the factual basis for the opinions it presents, leaving

it for readers to evaluate for themselves, no defamation claim can lie.  To succeed under the First

Amendment, a defamation claim must be based on statements of fact, not opinion.  *Milkovich v.*

*Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40

(1974).  Whether a statement is one of opinion is a question of law, *Chapin v. Knight-Ridder,*

*Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993), and courts routinely dismiss defamation suits on

this basis alone.[23]  "The principle that opinions based on disclosed facts are protected is well

established."  *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704, *aff'd*, 111 F. App'x 99 (4th

Cir. 2000) (D. Md. 2000); *Schnare*, 104 F. App'x at 852 (affirming grant of motion to dismiss

where author accused plaintiff of lying to a court but also "disclose[d] the factual basis [and

allowed] the reader to draw her own conclusion"); *see also Chapin*, 993 F. 2d at 1093 (stating

---

[23] *E.g.*, *Schnare v. Ziessow*, 2004 WL 1557804, 104 F. App'x 847 (4th Cir. 2004) (*per curiam*) (affirming dismissal); *Arthur v. Offit*, No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010); (granting Rule 12(b)(6) motion dismissing plaintiff's defamation complaint arising from quotation published stating that "She lies"); *Farah*, 736 F.2d at 531 (affirming Rule 12(b)(6) dismissal of claims challenging statements of opinion).

that when "the bases for the … conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related").

Here, the March 25 Article fully discloses the facts upon which the opinions are based. The Article states that Plaintiff "was less of a stranger to the media that she originally seemed" and "has an uncanny knack for finding the spotlight," Ex. C. at 1.  The Article then provides the factual basis for this opinion, noting Plaintiff has "appeared on the 'Oprah Winfrey Show,' CNN and Fox News Channel and in articles by the Associated Press and Newsday, among many other publications."  *Id.*  Where "the facts from which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false" – here, because Plaintiff's media appearance are a matter of public record – "the defendant is not subject to liability for the opinion."  *Agora*, 90 F. Supp. 2d at 705 (quoting *Peroutka v. Streng*, 116 Md. App. 301, 320, 695 A.2d 1287, 1297 (1997)).

The March 25 Article also states that "a … review of public records and Watkins' previous statements about her life," *id*. at 2, "revealed plenty of inconsistencies and questionable claims."  *Id*.  The Article outlines the factual basis for this statement as well, recounting Plaintiff's varying public statements regarding her experience on 9/11 – including her claim to the Associated Press that she "witnessed the [9/11] attack on the Pentagon," and her statement a year later, on the official website of the Los Angeles Air Force Base, that she "was outside her building in New York when the terrorists attacked."  *Id*. at 2.  The Article further compares Plaintiff's 2015 statement to Baltimore Magazine that she "spent '16 years in the military,'" *id*. at 3, with Air Force and National Archives records showing Watkins instead served nine and half years.  *Id*.  Defendants conclusion that Plaintiff had made "inconsisten[t]" statements was thus

14

supported by the countervailing media reports and government records and publications cited in the Article.  *Partington v. Buliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995).

Finally, the March 25 Article expresses the subjective opinion that Plaintiff's accomplishments "aren't as impressive as she has led, or at least allowed, people to believe," *id.* at 2, relying upon the uncontroverted fact that although Plaintiff claimed in a "interview on the Oprah Winfrey Network" to be attending Harvard University, she was actually enrolled "at Harvard Extension School, a far less rigorous division of the university that makes classes available to anyone who signs up and pays tuition."  *Id.* at 3.  The Article also presents the less "impressive" fact that although Plaintiff claimed to have launched a media company, *id.* at 2, the endeavor was not "publishing content at the moment."  *Id.*  Of course, readers may disagree with the conclusion as to whether these achievements are "impressive," but the First Amendment protects the opinion based upon disclosed facts so that the reader may make up his own mind.  *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1290 (4th Cir. 1987); *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144-45 (D.C. Cir. 1994).

### E.  The Plaintiff Fails to Plausibly Plead Fault on the Part of Defendants

Even if the articles were substantially false, and even if they were not protected opinion, Plaintiff's Amended Complaint fails to state a claim as a matter of law because it does not allege the requisite high degree of fault on the part of The Washington Post and its reporters.  As a limited-purpose public figure, Plaintiff does not and cannot plausibly plead actual malice (or, any other applicable standard of fault).  The First Amendment mandates that a public figure plaintiff "may recover for injury to reputation only on clear and convincing proof of "actual malice," a state of mind the Supreme Court has defined as "knowledge of … fals[ity] or … reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

### 1.    Watkins Is a Limited-Purpose Public Figure

Plaintiff, a self-described "freelance journalist," Am. Compl. ¶ 12, who has spent years seeking and obtaining media attention for her military service and work on behalf of veterans, is, as a matter of law, a limited-purpose public figure in the context of veterans' issues and the public controversy centered on her widely publicized appearance at a presidential campaign rally.[24]  Watkins is comparable to the plaintiff in *Chapin*, who the court deemed a public figure, based on his long and widespread charitable activities, which became the subject of the stories at issue.  993 F.2d at 1092 n.4.  Watkins' self-promotion in the field of veterans' affairs, her participation in a series of interviews, including with Oprah Winfrey, and speeches concerning her veteran status, her appearance on the TV show "Say Yes to the Dress," her decision to launch a website devoted to veterans issues, and her efforts generally to "deploy[] [herself] on the front-lines of debate," *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 710 (4th Cir. 1991), including attending and participating in the Trump press conference to question the candidate on whether he would hire veterans at his namesake hotel in the nation's capital, confirm that Plaintiff has willingly thrust herself into the public sphere.  "Because Plaintiff engaged in a course of conduct that was likely to invite attention and scrutiny, Plaintiff cannot now claim that [she] was a private figure who was dragged into this controversy unwillingly." *Hatfill v. N.Y. Times Co.*, 488 F. Supp. 2d 522, 530 (E.D. Va. 2007), *aff'd*, 532 F.3d 312 (4th Cir. 2008).

---

[24] "Whether the plaintiff is a public figure is a question of law for the court to resolve." *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1294 n.12 (D.C. Cir. 1980).  The Fourth Circuit set out a five-factor test to determine whether a plaintiff is a public figure: (1) plaintiff's access to channels of effective communication; (2) plaintiff's assumption of a role of special prominence in a public controversy; (3) plaintiff's attempts to influence the outcome of the controversy; (4) existence of the controversy prior to publication of the statements; and (5) plaintiff's retention of public figure status at the time of the alleged defamation. *Fitzgerald v. Penthouse Int'l*, 691 F.2d 666 (4th Cir. 1982).

### 2.      The Articles Report on a Matter of Public Concern

The Articles in this case clearly address matters with which the public has legitimate concern – a bizarre and widely broadcast incident involving Plaintiff and Donald Trump.  The Supreme Court has explained that "public discussion of the qualifications of a candidate for elective office presents what is probably the strongest possible case" for the robust protection of speech against libel claims embodied in the seminal *New York Times Co. v. Sullivan* decision. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989).[25]  Here, the March 25 Article spotlighted the presidential candidate's surprising decision to conduct a job interview at a campaign event, and his campaign's decision to provide media credentials to a woman who purported to represent a non-existing website against the backdrop of the campaign's contentious dealings with established media outlets.  *See* Am. Compl. ¶ 12.  The Fourth Circuit's conclusion in *Chapin* thus has great resonance in this case: "[T]he First Amendment's press and speech clauses greatly restrict the common law where defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern. Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee."  993 F.2d at 1091-92 (internal quotation marks and footnote omitted.)

### 3.      Plaintiff Fails to Plausibly Plead Actual Malice

As a public figure, Plaintiff is required to plead facts showing that the Washington Post Defendants acted with actual malice by clear and convincing evidence, but she cannot plausibly

---

[25] *See also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271-72 (1971) ("[I]f the First Amendment was 'fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people,' then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."); *A.S. Abbell Co. v. Barnes*, 258 Md. 56, 265 A.2d 207 (1970) (qualifications and performance of government employees, especially those seeking high office, matter of public interest.)

do so.[26]  *See Gertz*, 418 U.S. at 331-32.  "The standard of actual malice is a daunting one."

*McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996).  Plaintiff must plead the

speaker knew the statements were false or "in fact entertained serious doubts as to the truth"

when he made defamatory statements.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see

also Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 730 (D. Md. 2009), *aff'd*, 422 F.

App'x 269 (4th Cir. 2011); *Henry v. Nat'l Ass'n of Air Traffic Specialists*, 836 F. Supp. 1204,

1212(D. Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994).

　　　The actual malice standard imposes a heavy burden on plaintiffs.  It "is not measured by

whether a reasonably prudent man would have published, or would have investigated before

publishing."  *St. Amant*, 390 U.S. at 731.  Rather, the plaintiff has the burden of pleading and

ultimately proving that the defendant made the statements with a "high degree of awareness of

their probable falsity."  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  As the D.C. Circuit has

explained this bedrock Constitutional principle, a public figure plaintiff, like Watkins, could only

support a libel claim with allegations that the defendant was subjectively aware the story was

"(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in

circulation; or (3) based wholly on an unverified anonymous telephone call or some other source

that [plaintiff] has obvious reasons to doubt."  *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C.

---

[26] Even if Ms. Watkins were not a limited-purpose public figure (which she is), the Amended Complaint must be dismissed because, on its face, it does not allege facts sufficient to state a claim under a negligence standard, the lower standard applicable to private-figure plaintiffs.  *Boccone v. American Express Co.*, No. RDB 05-34336, 2007 WL 2914909, at *7 n.6 (D. Md. Oct. 4, 2007); *see also Gertz*, 418 U.S. at 347 (holding that states may not impose "liability without fault" in libel cases brought by private plaintiffs).  As the March 25 Article reflects, Borchers relied on articles previously published in reputable publications and broadcast media, and on official military records and publications.  He also included Watkins' version of the facts in the Article.  The Washington Post, in turn, relied on a reputable reporter – all factors that show, as a matter of law, not just lack of actual malice, but lack of negligence.  *See, e.g.*, *Winn v. United Press Int'l*, 938 F. Supp. 39, 45 (D.D.C. 1996) ("[A] periodical that relies on articles from other reliable publications is not negligent as a matter of law when it does not verify those articles with their original sources."), *aff'd*, 1997 WL 404959 (D.C. Cir. 1997); *Hakky v. Wash. Post. Co.*, No. 8:09-cv-2406, 2010 WL 2573902, at *6 (M.D. Fla. June 24, 2010) (dismissing libel claim against Washington Post because, in part, "under *Iqbal*, Plaintiff failed to allege sufficient facts demonstrating negligence or actual malice on the part of Defendants.").

Cir. 2003).  "'For [the actual malice] standard to be met, the publisher must come close to willfully blinding itself to the falsity of its utterance.'"  *Tavoulareas v. Piro*, 817 F.2d 762, 776 (D.C. Cir. 1987) (*en banc*) (citation omitted).  Plaintiff cannot clear this high hurdle, even at the pleading stage.

In the wake of *Iqbal* and *Twombly*, a plaintiff cannot state a claim simply by making conclusory assertions of the elements of actual malice, which is all the Amended Complaint does here.  At most, Plaintiff's allegations go to common law malice, which is irrelevant.  *See* Am. Compl. ¶¶ 49-56.  Indeed, federal courts in the Fourth Circuit and across the country now routinely dismiss defamation cases for failure to state a claim where, as here, the plaintiff fails to plead allegations to make actual malice plausible.[27]  Because the March 25 Article expressly relies on reputable media, official military records, and Watkins' own denials, Plaintiff cannot plausibly meet the "daunting" standard of actual malice.[28]

The facts here, based on the face of the March 25 Article itself (and the other articles), conclusively demonstrate an ***absence*** of actual malice by Defendants as a matter of law.  *First*, the Article reflects that Borchers interviewed Watkins, which Plaintiff confirms in the Amended

---

[27] *E.g.*, *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761-62 (D. Md. 2015) (dismissing complaint that "does nothing more than deliver a bare recitation of the legal standard for malice."); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 288 (S.D.N.Y. 2013); *Parisi v. Sinclair*, 845 F. Supp. 2d 215 (D.D.C. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012); *Mayfield*, 674 F.3d at 378; *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011); *Hanks v. Wavy Broad., LLC*, No. 2:11cv439, 2012 WL 405065, at *12 (E.D. Va. Feb. 7, 2012); *Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 17 (D. Me. 2012); *Diario El Pais, S.L. v. Nielson Co., (US)*, No. 07CV11295, 2008 WL 4833012, at *6-7 (S.D.N.Y. Nov. 6, 2008).  *See also Hakky*, 2010 WL 2573902, at *6-7 (granting 12(b)(6) motion because "Plaintiff failed to allege sufficient facts demonstrating … actual malice on the part of Defendants.  Although Plaintiff does point to specific statements in the Article that are false or misleading, Plaintiff does not state … facts supporting that they were made with actual malice.").

[28] *Parisi*, 845 F. Supp. 2d at 219 (finding failure to plead actual malice when plaintiff cited defendant's book showing defendant took steps to verify the statements and relied on multiple sources); *Diario El Pais*, 2008 WL 4833012, at *6-7 (finding failure to plausibly plead actual malice when complaint showed defendant took actions to ensure accuracy and thus it did not possess a subjective belief of falsity).

Complaint, *id.* ¶¶ 46-47,  and her denials are included throughout the Article.[29]  *See Parisi*, 845 F. Supp. 2d at 218-29, *Lohrenz*, 350 F.3d at 1286; *Biro*, 963 F. Supp. 2d at 287-88.[30]

*Second*, the Articles rely in good faith on previously published material from reputable publications, **precluding** Plaintiff from plausibly pleading actual malice as a matter of law.  *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988); *Biro*, 963 F. Supp. 2d at 279 (plaintiff could not plausibly plead actual malice because defendants republished an article from *The New Yorker*, a reputable publication).  Plaintiff has not alleged that she has obtained retractions or challenged any of these publications in a lawsuit.

*Third*, reliance on military and other official records, such as a publication on the website of the Los Angeles Air Force Base reporting Watkins' statements that she "was outside her office building in New York when the terrorists attacked", and Air Force records providing her retirement date of May 16, 2008, cannot constitute actual malice.  *See Bell v. Associated Press*, 584 F. Supp. 128, 129, 132 (D.D.C. 1984); *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 292 (4th Cir. 2008).  The Fourth Circuit has adopted a limited fair report privilege for republication of contents of government records, concluding that the rationale for the privilege militates against a finding of malice, because "to find reckless disregard of truth in instances in which the privilege encourages reporters to report in timely fashion on the workings of government will exact costs upon one of the basic functions of a free press."  *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991).

---

[29] *See, e.g.*, Ex. C at 1 ("Watkins insisted she never claimed to be in New York or that she enlisted after 9/11"); Ex. C at 2 ("[Watkins] explained that she arrived at the number 16 [years of military service] by including additional time in which she received medical treatment covered by the military.");  Ex. C at 3 ("'I was sincere when I came; there was no agenda.'").

[30] Plaintiff's general denials in her interview with Borchers do not establish Defendants' knowledge or recklessness as to falsity.  *See Edwards v. Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) (actual malice "cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error").

*Fourth*, given that the Articles were the work of reputable journalists, *see* Am. Compl. ¶ 45, Plaintiff cannot plausibly plead that The Washington Post was negligent, much less acted with actual malice, in relying on and publishing the work.  *See Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1032 (2d Cir. 1997) (publisher may not be liable for article "if it relies upon the integrity of a reputable author and has no serious reason to question the accuracy of the information provided by that author").  Indeed, The Washington Post would have no reason to doubt its journalists since other reputable publications had also published the same information regarding Watkins' past for years without legal challenge.[31]

*Fifth*, the allegation that Defendants rejected Plaintiff's request for retraction, Am. Compl. ¶ 27 & Ex. 6, fails as a matter of law because it does not prove knowledge of falsity at the time of initial publication.[32]  Here, where there was no plausible allegation of error, the "refusal to retract" is only further evidence of "*no* actual malice." *Tavoulareas v. Piro*, 759 F.2d 90, 132 n.51 (D.C. Cir. 1985) ("[T]he refusal may show that the publisher believed and still believes that the falsehood was true."), *vacated in part*, 817 F.2d 762 (D.C. Cir. 1987) (*en banc*).

*Finally*, as to Plaintiff's general allegation that Defendants "abandon[ed] traditional journalistic integrity and ethics to project their political bias and dishonesty onto the American public," Am. Compl. ¶ 39; *see also id.* ¶¶ 40, 44, the U.S. Supreme Court never has adopted a departure from professional standards rule, *Reuber*, 925 F.2d 703, and, in fact the Supreme Court

---

[31] Plaintiff does not allege any facts that would suggest that the publisher The Washington Post acted with any degree of fault.  *See McFarlane*, 74 F.3d at 1303 (because actual malice is a question of each defendant's state of mind, absent *respondeat superior*, actual malice will not be imputed from the author to the publisher).

[32] *See Biro*, 963 F. Supp. 2d at 281-82, 286 (holding that defendant's after-the-fact refusal to retract fails to plausibly allege actual malice as a matter of law because "a failure to retract occurs, by definition, *after* publication, meaning that its probative value as to a defendant's state of mind at the time of publication is dubious at best."); *Sheridan Square Press*, 91 F.3d at 1515 ("McFarlane presents no authority, however, nor are we aware of any, for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication."); *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) (the *Times*' "failure to retract upon respondent's demand … is likewise not adequate evidence of malice for constitutional purposes").

affirmed that such departure alone is insufficient to support an actual malice finding. *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 665-66 (1989). Plaintiff's complaint that the Articles did not portray facts as she would have liked, Am. Compl. ¶ 34, is likewise insufficient.[33] And, Watkins' claim Borchers "lied on the date Watkins gave him as her official retirement" date, Am. Compl. ¶ 27, sets forth no facts asserting anything more than mistake, at most, which is insufficient to plead, or prove, actual malice. *Time, Inc. v. Pape*, 401 U.S. 279, 290-92 (1971); *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 117 (D.C. Cir. 2017).

Plaintiff does little more than parrot the words of the actual malice standard. Am. Compl. ¶¶ 49-56. Such a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. And the only allegation that could possibly be construed as attempting to allege actual malice – that defendants supposedly failed to investigate, Am. Compl. ¶¶ 32, 53 – is not only belied by the careful reporting and attributions evident on the face of the Articles, but is also insufficient to establish actual malice. *Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980). Thus, Plaintiff's failure to plausibly plead actual malice necessitates dismissal.

### F.      Plaintiff's Other Tort Claims Fail

Plaintiff's claims for false light and intentional infliction of emotional distress are barred not only by basic principles of tort law, but also by the First Amendment. Plaintiff fails to state facts to plausibly plead the elements of those claims.[34] And a "plaintiff may not use related

---

[33] *See Miami Herald v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment.")

[34] For example, for the reasons set forth *supra* §§ III.C and III.E, Plaintiff cannot show the requisite falsity or fault to establish a claim for false light, *See, e.g., Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. at 514, 665 A.2d at 318 ("[A] defendant in a false light case is entitled to judgment as a matter of law, as in defamation claims, where

causes of action to avoid the constitutional requisites of a defamation claim." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319-20 (D.C. Cir. 1994) (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670 (1991)).  *See Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 503 n.5 (D. Md. 2015) ("false light claim need not be assessed separate and apart from . . . defamation claim because '[a]n allegation of false light must meet the same legal standards as an allegation of defamation[,]'") (quoting *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140 (2012)), *aff'd*, 646 F. App'x 294 (4th Cir. 2016); *Hustler Magazine v. Falwell*, 485 U.S 46, 50 (1988) (dismissing intentional infliction of emotional distress claims).  Because Plaintiff's "defamation claim fails, so do [her] other tort claims based upon the same allegedly defamatory speech." *Farah*, 736 F.3d at 540.

## IV.    CONCLUSION

For the foregoing reasons, the Court should find that, based on the face of the Amended Complaint and articles incorporated by reference, the Amended Complaint fails to state a claim as a matter of law and should be dismissed in its entirety with prejudice.

DATED:  August 4, 2017

---

the statement is true").  Nor can Plaintiff show the requisite "extreme and outrageous" conduct, intent, or severe distress to plead a claim for intentional infliction of emotional distress. *Hatfill v. N.Y. Times Co.*, 416 F.3d 320 (4th Cir. 2005) (if plaintiff unable to satisfy constitutional requirements to establish defamation claim against media defendant, unlikely plaintiff could prove defendant's conduct so intentional or reckless or sufficiently outrageous to support claim for emotional distress.); *cf. Snyder v. Phelps*, 562 U.S. 443, 455-58 (2011) (the First Amendment bars recovery where the conduct is speech on a matter of public concern, even if such speech could be deemed extreme and outrageous).

Respectfully submitted,


_____/s/ Constance M. Pendleton_____
Lisa B. Zycherman (D. Md. Bar # 16969)
Constance M. Pendleton
  (*Admitted pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Ph: 202-973-4200; Fax:  202-973-4499
lisazycherman@dwt.com
conniependleton@dwt.com

*Counsel for Defendants The Washington Post,
Callum Borchers, and Emily Heil*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2017 the foregoing Motion to Dismiss, Declaration of

Lisa Zycherman, exhibits attached thereto, and proposed order were served by email and first

class mail, postage prepaid, upon:

> Alicia Watkins, *pro se*
> 10221 River Road, # 59717
> Potomac, MD  20879


                    _____/s/ Constance M. Pendleton_____
                    Constance M. Pendleton