# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| ALICIA N. WATKINS, | * |
| Plaintiff, | * |
| v. | Case No.: PWG-17-818 |
| THE WASHINGTON POST, ET AL., | * |
| Defendants. | * |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alicia Watkins attended a press conference with then-presidential candidate Donald Trump. During the press conference, Ms. Watkins asked Mr. Trump a question, and then he proceeded to conduct an impromptu job interview of her. The Washington Post and other news organizations published articles surrounding the press conference in which they disclosed information they had learned about Ms. Watkins, who was previously unknown to them. Ms. Watkins is aggrieved about what these stories said, and filed this litigation on March 24, 2017. Compl., ECF No. 1. Acting without an attorney, she brings four counts against the Washington Post and the authors of its articles, Callum Borchers and Emily Heil: False Light (Count I), Defamation (Count II), Publication with Actual Malice (Count III), and Intentional Infliction of Emotional Distress (Count IV). Am. Compl. Defendants have filed a motion to dismiss all of Plaintiff's claims. Defs.' Mot., ECF No. 23.[1] Because Ms. Watkins has failed to adequately plead her claims for defamation, false light, and intentional infliction of emotional distress and

---

[1] Defendants' Memorandum in Support of its Motion appears as a part of the same electronic filing as its Motion, ECF No. 23. The parties fully briefed the motion. ECF Nos. 29, 32. A hearing is not necessary. *See* Loc. R. 105.6.

her claim for publication with actual malice is not an independent cause of action, I will grant Defendants' motion and dismiss this case with prejudice.

**Background**

In March 2016, Plaintiff Alicia Watkins, "a disabled 9/11 Survivor, formerly homeless veteran, and wounded warrior," attended a press conference held by then-presidential candidate, Donald Trump "to advocate for homeless and jobless veterans." Am. Compl. ¶ 1, ECF No. 18. At the press conference, Mr. Trump interviewed Ms. Watkins and said that if an agreement could be reached regarding salary, she would probably be offered employment. The interview became the subject of three Washington Post articles published on March 21, 22, and 25, 2016, and is the focus of this litigation. *Id.* ¶¶ 1, 27.

Ms. Watkins alleges that the three articles were written because of the Washington Post's distain for Trump and that the information published defamed her. *See id.* ¶¶ 34, 39, 43. Ms. Watkins specifically alleges that the Washington Post articles mischaracterized her enrollment at Harvard University, *id.* ¶¶ 23, 29, "belittled" her by referring to her as a "beauty queen," *id.* ¶ 21, and misstated aspects of her military service record to include her dates of service and the locations where she has served, *id.* ¶¶ 27, 29–30. Ms. Watkins also alleges that "Ms [sic] Heil then published the name and location of Ms. Watkins's partner which was highly shielded information because of his classified position which even the show Ms. Heil referenced for the leak didn't reveal."[2] *Id.* ¶ 22.

---

[2] Ms. Watkins does not clearly indicate what she means by this statement. However, I understand this to mean that the TLC television show "Say Yes to the Dress" did not reveal either or both the name of her partner or where he resides. *See* March 22, 2016 Article, ECF No. 18-2.

Ms. Watkins does not particularize which articles contained which statement, but she does attach the articles to her Amended Complaint.[3] The only allegedly defamatory statement in the March 21, 2016 article is a reference to Ms. Watkins as a "former beauty queen." ECF No. 18-1. The March 22, 2016 article discusses Ms. Watkins's Harvard enrollment, refers to her as a "beauty queen," states that she retired from the military in 2008, and discloses information about her partner. ECF No. 18-2. The March 25, 2016 article also refers to her as a "beauty queen" and discusses her military service record and her Harvard enrollment. ECF No. 18-3.

Ms. Watkins filed her initial complaint on March 24, 2017. Compl., ECF No. 1. Consistent with the order that I issued at the start of this case governing the filing of motions, Defendants filed a pre-motion letter, stating the grounds for a motion to dismiss that they wanted to file. Pre–Mot. Ltr., ECF No. 12. I allowed Ms. Watkins the opportunity to amend her complaint to address the deficiencies Defendants identified in their letter, ECF No. 17, and she filed the Amended Complaint, ECF No. 18. Defendants, still believing the pleading to be deficient for the reasons previously disclosed to her in their pre-motion letter, have moved to dismiss. ECF No. 23.

The parties jointly submitted and I approved a briefing schedule for this motion, allowing them more time than this Court's Local Rules allow in which to complete the briefing process. ECF Nos. 19, 22. Although Ms. Watkins initially had one month to file an opposition to the motion to dismiss, she requested and I granted two extensions of time, permitting her more than seven weeks in total to file her opposition. ECF Nos. 25, 26, 27, 28. Ultimately, however, Ms. Watkins did not file a substantive response. Rather, her response to Defendants' motion only stated that she was requesting a hearing on the motion "because Plaintiff would be unjustly

---

[3] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

3

wronged if Judge dismisses Plaintiff's case because of [unstated] circumstances beyond the Plaintiff [sic] control which would not prejudice Defendants." Pl.'s Opp'n 1. As provided in the Local Rules, unless otherwise ordered by the Court, all motions are to be decided without a hearing. Loc. R. 105.6.

Notably, when a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them. Failure to respond to the defendants' arguments constitutes abandonment of those claims. *See Whittaker v. David's Beautiful People, Inc.*, No. DKC-14-2483, 2016 WL 429963, at *3 n.3 (D. Md. Feb. 4, 2016); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 669 n.9 (D. Md. 2013); *Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 & 783 (D. Md. 2010). Any abandoned claims are subject to dismissal with prejudice. *Sewell*, 2013 WL 6858867, at *4 ("retaliation claim was dismissed with prejudice . . . because she abandoned [the] claim by failing to address it in the reply brief."); *Farrish v. Navy Fed. Credit Union*, No. DKC-16-1429, 2017 WL 4418416, at *3 (D. Md. Oct. 5, 2017). While abandonment of claims by failing to file an opposition to a dispositive motion alone may be a sufficient reason to dismiss a complaint, I nonetheless will independently consider the substantive sufficiency of her claims.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th

4

Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff is proceeding *pro se*, and her Complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

Although at this stage of the proceedings, I accept the well pleaded facts alleged in Ms. Watkins's Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, I "may consider documents attached to the complaint," such as the three articles at issue, "as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written

instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011). Accordingly, where Ms. Watkin's characterization of the contents of the three articles conflicts with the articles themselves, it is the articles that control.

## Discussion

### *Count I: False Light and Count II: Defamation*

#### Statute of Limitations

Maryland law is clear.[4] Defamation actions have a one year statute of limitations, Md. Code Ann., Cts. & Jud. Proc. § 5-105, which begins to run "when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff." *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 235 (D. Md. 1997) (citing *Sears Roebuck & Co. v. Ulman,* 287 Md. 397, 401, 412 A.2d 1240 (1980)). In cases involving the mass media, the plaintiff reasonably should have known of the allegedly defamatory information when it is published. *Tani v. Washington Post*, No. PJM-08-1130, 2009 WL 8652384, at *2 (D. Md. June 18, 2009) ("Because these articles were widely available online and could have been discovered immediately, the statute of limitations began to accrue on the date the articles were published."); *see also Shepard v. Nabb*, 581 A.2d 839, 844 (Md. Ct. Spec. App. 1990) (holding that the statute of limitations is not tolled absent the plaintiff demonstrating that he or she did not know or could not reasonably have known of the defamatory statements).

Defendants argue that two of the three articles should not be considered in this litigation because the statute of limitations began to run when they were published on March 21 and 22,

---

[4] Defendants apply Maryland law, *see* Defs.' Mem. 2, and Plaintiff does not argue otherwise, *see* Pl.'s Opp'n. Therefore, I, too, will apply Maryland law.

2016, and therefore, the one year statute of limitations elapsed before Ms. Watkins filed suit on March 24, 2017. Defs.' Mem. 7–9. Ms. Watkins does not dispute the publication dates and has provided both articles with their corresponding publication dates as attachments to her Complaint. And, even though her Amended Complaint alleges that she discovered the articles on March 25, 2016, Am. Compl. ¶ 17, the publication dates, not the Plaintiff's actual discovery date, are the dates that trigger the statute of limitations for mass media publications. *See Tani*, 2009 WL 8652384, at *2; *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 316 (1995) ("[A]ll libel and slander claims must be filed within one year of the date on which the damaging statements were improperly communicated."). The two articles that were published prior to March 24, 2016, therefore, are barred by the statute of limitations and will not be considered with regard to the defamation claim. *See id.*

Thus, the only article that I will consider for purposes of the defamation claim is the March 25, 2016 article by Callum Borchers entitled "The curious case of the woman Donald Trump 'interviewed' for a job this week." March 25, 2016 Article, ECF No. 18-3. However, Ms. Watkins may bring a claim of false light with regard to all three articles, as there is a three-year statute of limitations for that tort. *Allen v. Bethlehem Steel Corp.*, 547 A.2d 1105, 1108 (Md. Ct. Spec. App. 1988).

Sufficiency of Defamation and False Light Claims

To state a claim for defamation, a plaintiff must allege that "the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001). "[I]n all defamation actions, 'truth is no longer an affirmative defense to be established by the defendant, but instead the burden of proving falsity

rests upon the plaintiff." *Telnikoff v. Matusevitch*, 702 A.2d 230, 246 (Md. 1997) (quoting *Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 698 (Md. 1976)). Thus, the essence of a defamation claim is the publication of a falsehood. "Indeed, if a plaintiff cannot prove the falsity of a particular statement, the statement will not support an action for defamation." *Spengler v. Sears Roebuck & Co.*, 878 A.2d 628, 640 (2005) (citing *Bagwell*, 665 A.2d at 316–17).

To state a claim for false light, a plaintiff must allege (1) that the defendant gave "publicity to a matter concerning another that places the other before the public in false light"; (2) "the false light in which the other person was placed would be highly offensive to a reasonable person"; and (3) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell*, 665 A.2d at 318 (citing Restatement (Second) of Torts § 652E). A claim for placing the plaintiff in false light, a form of the tort of invasion of privacy, "may not stand unless the claim also meets the standards of defamation." *Piscatelli v. Smith*, 12 A.3d 164, 173 (Md. Ct. Spec. App. 2011) (quoting *Crowley v. Fox Broadcasting Co.*, 851 F. Supp. 700, 704 (D. Md. 1994)). The tort of false light also involves the publication of false facts; therefore, like defamation, the plaintiff must prove the information is false. *Hatley v. Tuffy*, No. JFM-09-711, 2010 WL 4923831, at *9 (D. Md. Dec. 2, 2010). "[O]ne major distinction is that defamation action protects a party's interest in a good reputation while false light protects interest in being let alone from adverse publicity." *Bagwell*, 665 A.2d at 315 n.8 (internal citation omitted).

Defendants argue that Ms. Watkins has failed to adequately allege falsity and fault, and that she is a limited purpose public figure requiring a finding of malice. Defs.' Mem. 12–16. I need not address whether Ms. Watkins's Complaint must meet the heightened pleading requirements of a limited purpose public figure because her Complaint fails to state a claim

regardless of whether she is a private or public person.[5] I will address Ms. Watkins's false light claim for all three articles and her defamation claim only based on the March 25, 2016 article. *See Piscatelli*, 12 A.3d at 173; *Gohari*, 767 A.2d at 327.

Ms. Watkins claims that the articles contained false statements regarding four discrete areas: her enrollment at Harvard University; her being a "beauty queen"; the locations and dates of her military service; and the disclosure of "highly shielded information" about her partner.[6] Am. Compl. ¶¶ 21–23, 25, 27, 29–30. As noted, statements on these four topics appear in the March 22, 2016 article, and statements regarding all but Ms. Watkins's partner appear in the March 25, 2016 article. Only the allegedly defamatory statement about her being a former "beauty queen" appears in the March 21, 2016 article. Ms. Watkins alleges that "[t]he underlying premise" of the March 25, 2016 article "was that Watkins was lying about her background and military career and that Watkins is taking 'online' courses at the Harvard Extension School. This is false . . . She is an accepted Harvard University student contrary to the open enrollment Mr. Borchers slurred in his article." *Id.* ¶ 29.

1. Reference as Former Beauty Queen

Notably, Ms. Watkins does not deny her involvement in beauty pageants. She merely disagrees with being referred to as a "beauty queen." But, in fact, she refers to herself as a beauty queen, claiming that "[t]he false, suggestive, and defamatory statements published by The

---

[5] If a plaintiff is determined to be a limited purpose public figure, one of the three designations within defamation law of a public person, the plaintiff would be required to prove the defendant's actions were done with actual malice and not merely with negligence. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964)); *Wells v. Liddy*, 186 F.3d 505, 532 (4th Cir. 1999) (quoting *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551–52 (4th Cir. 1994)).

[6] Plaintiff quoted a large portion of the March 25, 2016 Article verbatim following this allegation, but did not articulate if all or only some of the quoted language was placing her in a false light.

9

WAPO about her inconsistent background, *including her titles as a beauty queen* were ultimately designed to malign President Trump and discredit Ms. Watkins." *Id.* ¶ 26 (emphasis added). It is not defamation if the underlying fact is "substantially correct." *See Piscatelli*, 12 A.3d at 173; *Batson v. Shiflett*, 602 A.2d 1191, 1212 (Md. 1992). Therefore, this statement is not defamatory and cannot form the basis of a claim for defamation or false light. *See Piscatelli*, 12 A.3d at 173; *Gohari*, 767 A.2d at 327.

2. Disclosure of Shielded Information

The disclosure of "highly shielded information" about Ms. Watkins's partner in the March 22, 2016 article, *see* Am. Compl. ¶ 22, cannot support Ms. Watkins's false light claim because there is no allegation of harm from that statement to Ms. Watkins, the sole Plaintiff in this suit. *See Gohari*, 767 A.2d at 327. However, even if it did concern Ms. Watkins directly, it is not false—indeed, it is the accuracy of the statement that upsets Ms. Watkins—and "[p]ublication of true, but confidential, information does not place Plaintiffs in a false light." *Hatley*, 2010 WL 4923831, at *9. Ms. Watkins cannot state a false light claim based on this statement. *See id.*

3. Military Service Record

The March 22, 2016 article states that Ms. Watkins retired from the military in 2008. According to the March 25, 2016 Article, Ms. Watkins enlisted on November 10, 1998 and served until either May 16, 2008 (approximately 10 years), when she was placed on the Temporary Disability Retired List,[7] or September 24, 2012, when her time on the Temporary

---

[7] "[Service]Members who have been determined to be unfit for duty with a disability rated by the military Service as 30% or greater are eligible for disability retirement. A member whose condition is not stable may be placed on the temporary disability list (TDRL) for up to five years at which point they must be either discharged, retired or returned to duty. Members whose condition has stabilized at a disability rating of 30% or higher may be placed on the permanent

10

Disability Retired List expired (approximately 14 years). The March 25, 2016 Article clearly states that the author researched and identified discrepancies between Ms. Watkins's own statements on the subject and her military records and previously published accounts. In fact, the latter date of September 24, 2012 was based on a retirement certificate Ms. Watkins provided to the reporter. Ms. Watkins alleges that her "18-year, and previously impeccable reputation" was harmed by the reporting, but she does not provide an alternative start or end date for her service. Am. Compl. ¶ 34. Moreover, she does not allege how she was harmed, and the conclusory claim of harm from underrepresenting her military service is insufficient to state a claim for defamation or false light. *See Batson*, 602 A.2d at 1212 ("Put another way, a statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (internal quotations omitted); *Brown v. Ferguson Enter., Inc.*, No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) ("[T]he plaintiffs must show why [defendants'] allegedly false statements were *additionally* damaging beyond the damage that would have been caused had [defendants] truthfully reported the circumstances leading to the plaintiffs' termination.") (emphasis in original). Consequently, Ms. Watkins cannot state a claim for defamation or false light based on statements about her military service. *See Piscatelli*, 12 A.3d at 173; *Gohari*, 767 A.2d at 327.

    4. Enrollment at Harvard

Ms. Watkins alleges that she was accepted to and enrolled at Harvard University but had not taken online courses or any courses at the Harvard Extension School. The March 22, 2016 article stated that "[a]n internal Harvard directory identifies Watkins as being enrolled in the

---

disability retired list (PDRL)." *Military Compensation: Disability Retirement*, Department of Defense, http://Militarypay.defense.gov/Pay/Retirement/Disability.aspx (last visited Feb. 9, 2018). I may take judicial notice of this fact. Fed. R. Evid. 201(b), 902(5), 803(8)(A)(i).

Harvard Extension School, a lower-cost program where students typically take classes part time or online." The March 25, 2016 article stated:

> A claim of acceptance to Harvard suggests successful navigation of one of the world's most selective collegiate admissions processes. Watkins, however, enrolled at Harvard Extension School, a far less rigorous division of the university that makes classes available to anyone who signs up and pays tuition. Students who earn at least a B in their first three courses qualify for admission to a degree-seeking program.
>
> That's where Watkins is now, she said — studying online for a bachelor's degree in psychology at the extension school. It's not the elite version of Harvard most people think of but rather what the university bills as "Harvard – extended to the world for every type of adult learner."

At this stage in the litigation, I must accept Ms. Watkins's well pleaded factual allegations as true. In that she has said she did not enroll at Harvard Extension School or take online courses, she has pleaded that the Washington Post's articles on this particular fact are false.

However, Ms. Watkins has not pleaded adequately that the Washington Post was legally at fault for publishing the information in either of the articles. A plaintiff may prove legal fault by establishing the information was published with actual malice, or in the case of a private person, by proving both actual damages and publication with negligence. *See Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995) ("'Fault' for the purposes of the prima facie case [of defamation], may be based either on negligence or constitutional malice.") (internal citations omitted). Ms. Watkins does not allege negligence or claim damages in more than a conclusory fashion; rather, she attempts to allege that the Washington Post published its articles with actual malice.

Actual malice is properly alleged when a plaintiff pleads that a defendant had actual knowledge of falsity or recklessly disregarded the truth. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

> Actual malice *cannot* be established merely by showing that: the publication was erroneous, derogatory or untrue, the publisher acted out of ill will, hatred or a

desire to injure the official, the publisher acted negligently, the publisher acted in reliance on the unverified statement of a third party without personal knowledge of the subject matter of the defamatory statement, or the publisher acted without undertaking the investigation that would have been made by a reasonably prudent person. Moreover, malice is not established if there is evidence to show that the publisher acted on a reasonable belief that the defamatory material was "substantially correct" and "there was no evidence to impeach the [publisher's] good faith."

*Capital-Gazette Newspapers, Inc. v. Stack*, 445 A.2d 1038, 1044 (Md. 1982) (internal citations omitted).

Many of Ms. Watkins's allegations are mere recitations of the legal standard she is required to plead, *see, e.g.,* Am. Compl. ¶ 49 ("Evidencing a reckless disregard for truth or falsity, [the Washington Post] published accusations against Ms. Watkins that were so inherently improbable on their face as to raise serious doubts about their truth."), and therefore do not sufficiently plead that the Washington Post was legally at fault for publishing its articles. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761 (D. Md. 2015) (holding that "bare recitation of the legal standard" and "naked assertions alone" are insufficient to "support a finding of malice"). As for specifics, Ms. Watkins has alleged that, via phone and email and prior to publication, the Washington Post became aware of her belief that some of the information in the article was untrue. *See* Am. Compl. ¶¶ 31–32. She also alleges that the Washington Post decided to publish this information anyway, because of its distain for Trump. *Id.* ¶¶ 12, 17, 26. However, this is insufficient to allege actual malice. *See Capital-Gazette*, 445 A.2d at 1044.

Significantly, a journalist does not defame an individual by publishing the reliable information available to them. *See id.* The articles Ms. Watkins attached as exhibits to her complaint show that Heil and Borchers depended on statements from Ms. Watkins herself, other news sources, and military records. The content of the articles themselves, reflecting the sources relied upon by the authors, controls when considered against a conclusory allegation of malice in

her amended complaint. *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Indeed, courts have found that reporters are not negligent, let alone acting with malice, when relying on other reputable sources. *Winn v. United Press Int'l*, 938 F. Supp. 39, 45 (D.D.C. 1996) ("Recognizing the cost and logistical burden of verifying the authenticity of every news item and the public's need for prompt dissemination of the news, the court held that 'absent a showing that [it is] negligent or careless in condensing or summarizing other sources of news information,' a periodical that relies on articles from other reliable publications is not negligent as a matter of law when it does not verify those articles with their original sources.") (citing *Nelson v. Associated Press*, 667 F. Supp. 1468, 1477 (S.D. Fl. 1987); *see also Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 370–71 (S.D.N.Y. 1998) (holding that the republication defense is not limited to wire services when the source relied upon is clear). Accordingly, Ms. Watkins has failed to allege legal fault with regard the reporting of her Harvard enrollment and therefore fails to state a claim for defamation or false light based on the statements concerning her Harvard enrollment. *See Piscatelli*, 12 A.3d at 173; *Gohari*, 767 A.2d at 327. Thus, her false light and defamation claims will be dismissed in their entirety.

### Count III: Publication with Actual Malice

In Count III, Plaintiff purports to allege a separate claim for "publication with actual malice" against all defendants. Am. Compl. 13. Defendants address this claim along with Plaintiff's claims for defamation and false light in their discussion of the proper standard for pleading fault on the part of the publisher.. Defs.' Mem 17–22. However, the Court's independent research has not been able to locate any legal authority that an independent cause of action exists in Maryland for publication with actual malice; the only instances I have found where parties pleaded publication with malice were within the context of claims for the well-

established causes of action for false light and defamation. *See, e.g., Wells v. Liddy*, 186 F.3d 505, 532–33 (4th Cir. 1999); *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. 1995) ("'Fault,' for the purposes of the prima facie case, may be based either on negligence or constitutional malice . . . Constitutional malice, which is sometimes referred to as actual malice is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity.") (internal citations omitted); *Domchick v. Greenbelt Consumer Servs., Inc.*, 87 A.2d 831, 837 (Md. 1952) (holding that establishing a prima facie case for "publication with malice" is a "basis for an aggravation in damages" in claims for slander and libel). Because Ms. Watkins has offered no authority for the existence of an independent tort of "publication with actual malice," this claim must be dismissed. In any event, even if such a tort existed, for the reasons already discussed, Ms. Watkins has not sufficiently alleged actual malice. Therefore, Count III will be dismissed.

<u>Count IV: Intentional Infliction of Emotional Distress</u>

The tort of intentional infliction of emotional distress is "rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Bestkoff v. Bank of America, N.A.*, No. CCB–12–1998, 2012 WL 4960099, at *5 (D. Md. Oct. 15, 2012) (quoting *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) (citation omitted)). To plead this cause of action, a plaintiff must show that (1) the defendants' conduct was "intentional or reckless," as well as "extreme and outrageous"; (2) there was "a causal connection between the wrongful conduct and the emotional distress"; and (3) the emotional distress was "severe." *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). "'Extreme and outrageous'" conduct is such

that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater*, 5 A.3d at 89 (quoting *Harris*, 380 A.2d at 614 (internal citation omitted)).

Ms. Watkins's allegations, which fail to plead plausibly her claims for false light and defamation, do not rise to the level of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress. *See Hatfill v. New York Times Co.*, 416 F.3d 320, 336–37 (4th Cir. 2005) (holding that if Plaintiff "ultimately cannot prevail on his defamation claims because he is unable to satisfy constitutional requirements for recovery, then he likely will be unable to prove that [Defendant's] misconduct was intentional or reckless or that such misconduct was sufficiently outrageous to warrant recovery."); *Holt v. Camus*, 128 F. Supp. 2d 812, 817 (D. Md. 1999) ("For language alone to be actionable, the statement must be something the average member of the community would regard as being a complete denial of the plaintiff's dignity as a person.") (citing *Dick v. Mercantile–Safe Deposit & Trust Co.,* 492 A.3d 674 (Md. Ct. Spec. App. 1985)); *see also Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d 410, 414–15 (D. Md. 2010) (holding that conclusory statements do not establish "defendant's conduct was 'intentional and reckless'"). Thus, Ms. Watkins has not sufficiently alleged extreme and outrageous conduct, and her claim for intentional infliction of emotional distress is dismissed. *See Lasater*, 5 A.3d at 89; *Harris*, 380 A.2d at 614.

## Conclusion

Each of Ms. Watkins's claims fails to allege essential elements and is stated in conclusory fashion. Each is legally deficient and some are time-barred as well. Additionally, Ms. Watkins's failure to address Defendants' arguments constitutes an abandonment of her claims. I will therefore grant Defendants' Motion to Dismiss. As noted, Ms. Watkins amended

her Complaint after Defendants filed a letter request to file a motion to dismiss, in which they identified Ms. Watkins's pleading deficiencies and provided citations to Fourth Circuit case law. Pre–Mot. Ltr. Despite that guidance, Ms. Watkins failed to cure her pleading deficiencies when she filed her amended complaint. Thus, considering Ms. Watkins's failure to state a claim in her amended complaint after having been advised with specificity of the legal deficiencies in her initial complaint, dismissal with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 Fed. App'x. 899, 900 (4th Cir. 2013). Moreover, given the legal deficiencies noted above with regard to the claims against all Defendants, further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment").[8]

## ORDER

Accordingly, it is this 9th day of February, 2018, hereby ORDERED that:

1. The Motion to Dismiss, ECF No. 23, IS GRANTED;

2. Plaintiff's Complaint IS DISMISSED WITH PREJUDICE; and

3. The Clerk is DIRECTED to CLOSE THE CASE and to MAIL a copy of this Memorandum Opinion and Order to Plaintiff.

/S/
Paul W. Grimm
United States District Judge

jml

---

[8] Because the grounds discussed in this Memorandum are sufficient to justify dismissal with prejudice of Ms. Watkins's Amended Complaint, I need not address the many other grounds raised by Defendants, many of which are independently sufficient to require the same result.